UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

KEVIN R. CAMPBELL,                              Case No. DG 17-02570
                                                Chapter 13
              Debtor.                           Hon. Scott W. Dales
_____/

MEMORANDUM OF DECISION AND ORDER

        PRESENT:   HONORABLE SCOTT W. DALES
                   Chief United States Bankruptcy Judge

        By Order dated September 12, 2017 (the "Show Cause Order," ECF No. 27), the court directed Attorney Adam J. Gantz to appear and show cause why it should not require him to disgorge fees he received from debtor Kevin R. Campbell (the "Debtor") in connection with the above-captioned case.  At Mr. Gantz's request, the court adjourned the original hearing for a month, to November 7, 2017, in Grand Rapids, Michigan.  The Debtor and Mr. Gantz each appeared at the adjourned hearing *pro se*; the United States Trustee appeared through counsel.

        The court had jurisdiction over the Debtor's chapter 13 case under 28 U.S.C. §§ 157(a) and 1334(a), pursuant to the reference from the United States District Court under W.D. Mich. LCivR 83.2(a), and retained jurisdiction under the Show Cause Order, despite dismissing the case, to fulfill its statutory obligations under 11 U.S.C. § 329 and Fed. R. Bankr. 2017(a).

        The Show Cause Order, which Mr. Gantz admitted he failed to read until the night before the original return date, instructed him to appear and explain why the court should not (1) require him to disgorge any fees he received from the Debtor, and (2) cancel his retainer agreement with

the Debtor.  At the return hearing, with the consent of Mr. Gantz, the court took testimony from the Debtor, and accepted Mr. Gantz's own testimonial proffer.  The court admitted no exhibits, but considered the specific docket entries that the parties identified during the hearing, as well as the docket in this case more generally.

Significantly, Mr. Gantz did not provide an itemization of the time he spent in preparing and prosecuting the Debtor's case to its unsuccessful conclusion, though mid-way through the hearing he requested an opportunity to (i) supplement the record with an itemization, and (ii) adjourn the hearing for this purpose.  Having adjourned the hearing once for his convenience, and given the United States Trustee's opposition to any further adjournment, the court denied the request.  In refusing to adjourn further, the court was also mindful of the amount in controversy, and the fact that the Debtor had already appeared twice in connection with the Show Cause Order, once at the originally scheduled return hearing and again at the November 7 hearing.

Of course, Mr. Gantz's failure to itemize his time precludes the court from conducting the very review contemplated in § 329 and the Show Cause Order, as well as the case law.  *See, e.g., Boddy v. U.S. Bankruptcy Court W.D. Ky. (In re Boddy)*, 950 F.2d 334 (6th Cir. 1991).  This failure, without more, warrants disgorgement under the circumstances.  The court will not simply accept Mr. Gantz's opinion that the value of his services exceeded the fee he collected.

For his part, the Debtor credibly testified regarding the communication failures between him and Mr. Gantz, which the court is inclined to lay at the latter's feet, given his superior knowledge and experience.  In the court's experience, capable, professional counsel who experience communication difficulties with their clients at least appear in court at the dismissal hearing to give the court an understanding of the situation, or arrange with the trustee to adjourn the hearing. The stakes for not doing so in this case were particularly high given Mr. Gantz's own

proffer that the whole point of this proceeding was to save the Debtor's house (and equity) from imminent foreclosure, and the Debtor's uncontested testimony that he lost his house to foreclosure promptly after dismissal.

Moreover, Mr. Gantz's inattention to this case that the Debtor described in his testimony finds corroboration in the three-month delay between the date the Debtor signed the tax affidavit (June 11, 2017) and the date Mr. Gantz filed it (September 11, 2017) – after close of business on the day before the dismissal hearing.  *See* Affidavit of Kevin C. Campbell Re: Filing Tax Returns (ECF No. 23).  In addition, although Mr. Gantz noted his view that the only issue at the return hearing was whether the court should grant relief in this case, the premise of the Show Cause Order was, in part, the court's "general impression that this is hardly the first instance in which his failure to appear is followed by dismissal of his client's chapter 13 case."  *See* Show Cause Order at p. 1, ¶ 3.  Although Mr. Gantz did attend the return hearing, his post-dismissal actions and his response to the Show Cause Order did not change the court's impression.[1]

In considering whether the fees of a debtor's counsel are excessive, the court considers the lodestar analysis (impossible here, given Mr. Gantz's insufficient response to the Show Cause Order), as well as the "results attained."  *Cf.* Memorandum Regarding Allowance of Compensation and Reimbursement of Expenses for Court-Appointed Professionals (as amended effective Oct. 1, 2013) at ¶ 19 ("In most cases, the reasonableness of the work done and the fee charged will depend on the results attained"); *cf.* 11 U.S.C. § 330(a)(4)(B) (court's consideration of whether to award fees to chapter 13 debtor's counsel as a cost of administration includes finding of benefit to the

---

[1] If Mr. Gantz had addressed the issues leading to dismissal as he argued during the hearing, the court would have expected to see a prompt motion for reconsideration or relief from the dismissal order.  As far as the record shows, Mr. Gantz neither filed nor discussed this course of action.  Similarly, Mr. Gantz's response to the Show Cause Order, reading it several weeks after entry and then coming to the return hearing unprepared, make it easy to believe the Debtor's version of his own dealings with counsel.

debtor). Although the issue at the return hearing is not whether to award fees as a cost of administration, but instead whether the fees are "excessive" under § 329, the principles are similar enough. *In re Acevedo,* No. DG 12-06576, 2015 WL 3373030, at *2 (Bankr. W.D. Mich. Jan. 26, 2015) (distinguishing between § 329 and § 330 without deciding whether the standard of review is the same).

Here, based on the Disclosure of Compensation of Attorney for Debtor(s) (ECF No. 3) and the statements on the record, the court finds that Mr. Gantz received $1,167.00 from the Debtor sometime before May 23, 2017, to assist in saving his house. The Debtor lost his house through foreclosure after the dismissal of the chapter 13 case due, in part, to plan drafting and communication errors attributable largely, though perhaps not exclusively, to Mr. Gantz. Under the circumstances, the court finds that the $1,167.00 fee is excessive, so it will order disgorgement and cancellation of the retainer agreement. This relief is designed to prevent Mr. Gantz from pursuing collection from the Debtor, and to return some funds to the Debtor so that he may seek professional advice regarding possible redemption from the foreclosure sale or (failing redemption) use the funds for his inevitable relocation to a different residence.

NOW, THEREFORE, IT IS HEREBY ORDERED that (1) Mr. Gantz shall refund to the Debtor $1,167.00 within 14 days after entry of this Order; and (2) any retainer agreement between Mr. Gantz and the Debtor in connection with this case is cancelled and of no further effect.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Kevin R. Campbell, Adam J. Gantz, Esq., Brett N. Rodgers, Esq., and Matthew W. Cheney, Esq. (by first class mail).

END OF ORDER

**IT IS SO ORDERED.**

**Dated November 9, 2017**

Scott W. Dales
United States Bankruptcy Judge